(49 App. Div. 203.)

## WELSH v. CORNELL.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

> Where an employé in defendant's iron works was injured by the breaking of the clamp to which a derrick guy rope was fastened, and the clamp had been forged in defendant's shops from material furnished by it, and there was expert testimony that the break could have been caused only by the use of defective material in making the clamp, or the subsequent overstraining of the derrick, it was error, in an action for the injuries sustained, to take the question of defendant's negligence from the jury.
>
> Van Brunt, P. J., and Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by James Welsh against John M. Cornell, trading under the style of "J. B. & J. M. Cornell." From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

C. J. Hardy, for appellant.
Robert Thorne, for respondent.

O'BRIEN, J. The plaintiff sued to recover damages for personal injuries sustained by him while in the employment of the defendant, and under the following circumstances: On September 25, 1895, he was engaged in carting iron beams and in unloading them at a storage yard of the defendant. He and three other men had taken a load of beams to the yard, and were engaged in removing them from a truck and piling them up, when the accident by which he was injured occurred. The place in the yard at which he was working was under a guy rope, an appurtenance to a large stationary derrick used by the defendant in his business for the purpose of lifting heavy masses of material. This derrick was capable of sustaining a weight of at least 3½ tons. The boom of the derrick swung from a perpendicular mast about 65 feet high. The mast was held in position by steel guy ropes, which ran from its top to iron posts firmly imbedded in the ground, and distant from the foot of the

mast about 70 feet. The guy ropes were fastened at the top of the mast by a part of the apparatus called a "spider," and they extended to the iron posts, where they were secured by being attached to clamps or iron straps, which were fitted around the posts, and kept in place by bolts and nuts. The clamps were of forged iron, made in two pieces or sections of corresponding size and shape, and riveted together. The two parts or sections encompassed the post, and there was a projecting end or lip to each part, and the ends or lips were fastened together by bolts passing through them. When in place, one end of the projecting lips pointed to the derrick, and was attached by a turn buckle at the lower end of the guy rope. The other end of the projecting lips pointed in an opposite direction, and to that back stays were attached to assist in keeping the posts in place. While the plaintiff was at work under one of these guy ropes, and immediately in front of one of the posts,—that is, between the mast and the post,—the clamp or iron strap attached to the post gave way, and the guy rope, with a section of the clamp adhering to it, fell, struck the plaintiff, severed the thumb from one of his hands, and so injured the first finger of that hand that an amputation became necessary and was had.

The immediate cause of the plaintiff's injuries was that above stated. It was necessary for the plaintiff to show that the accident was the result of the negligence of the defendant, in connection with the cause of fall of the guy ropes and the clamp. The trial judge dismissed the complaint, holding that there was no evidence to go to the jury upon the question of the defendant's negligence. It is obvious that the accident happened by the breaking of the clamp, and not because of any defect in the guy rope or in the manner in which it was attached to the clamp. The plaintiff seems to have had several theories upon which it was sought to maintain the action, but it is only necessary to consider one of them, and that is that the defendant did not furnish a safe place for his servant, the plaintiff, to work in, because of the insecure and dangerous condition of machinery used by the defendant in his business, placed directly over and above the spot at which the plaintiff was required to perform his service for the defendant. An effort was made by the plaintiff to show that the defect in the iron clamp that fell was one in the material of which that clamp was made, or that it was a defect which might have been occasioned by overstraining of the clamp, a consequence of subjecting it to an excessive tensile strain, and which defect could have been discovered had reasonable inspection been made of the post and of the clamp. The derrick had been in use for a period of no longer than from two to six weeks. The clamp was forged in the defendant's own shop by the defendant's own blacksmith, and from material furnished by the defendant. It was shown by the plaintiff that the breaking load, in good condition, for each half of such a clamp as that which fell, was 6,500 pounds; that, if bolted securely to the other section, the breaking load of both, when fastened together, would be 13,000 pounds,— that is, if the clamp were of sound iron, properly forged. It was also shown that a clamp made of material originally sound, prop-

erly forged, and subjected to no overstrain, would not break by six weeks' ordinary use within the limits of safety. It was also shown that the cause of breakage in such a clamp as that which fell, under the conditions stated, would be due to a defect in the iron, and it was testified to that a defect sufficient to have caused this break, under the conditions appearing in the evidence, could probably have been discoverable on inspection. It further appeared that the causes which would bring about the break were—First, a strain beyond the strength of the material, assuming the material to be perfectly good; second, a defect in the iron, the effect of which would be to reduce the area of the iron to resist the strain. The witness who gave this testimony—a qualified expert—stated that, in his opinion and judgment, those were the two only causes which could produce the breaking of the clamp. He further swore that a defect in the iron at the time of the parting, not due to overstrain through overloading, could not have developed in sound iron within two or three years from the time it was forged or welded. There was evidence also of a competent witness having knowledge and experience of derricks, and their use and management, that they should be inspected at least once a day; and further evidence of one of the defendant's servants that this derrick was not inspected more than twice a week, and then only by the eye, the inspector standing upon the ground.

All this testimony was admitted by the learned trial judge, and we must take it in the most favorable light for the plaintiff in which it can be considered. Therefore we have this state of facts on the question of negligence, viz.: That this iron clamp, made in the defendant's own shop, from material furnished by him, broke after from two to six weeks' use; that had it been made of proper material, and properly placed, it would have sustained a tensile strain of twice that which was put upon it at the time it broke; that, if it had been made of proper material, it would not have broken from the strain put upon it when it fell, unless it had been weakened and rendered unsafe to bear that strain by previous overstraining. Hence the evidence tended to show, either defective material in the first place, or misuse in the second place, the result of which misuse, in its effect upon the iron, could have been detected by a proper and sufficient inspection, which proper and sufficient inspection was not made. The inference, therefore, to be drawn from the testimony, is either that the material was defective or the apparatus had been overstrained, and that could have been detected by proper inspection; for the evidence is positive that the break could not have occurred had not one or the other of those causes operated. The case has been stated strongly for the plaintiff, but quite within the limits of the proof, and the inferences which a jury might have drawn from that proof.

Without considering other questions discussed on this appeal, particularly those relating to rulings on evidence, we are of the opinion that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

RUMSEY and INGRAHAM, JJ., concur.

PATTERSON, J. I am unable to concur in the opinion of the court in this case. The cause of the breaking of the clamp has not been proven. There is no evidence except of the fact that an accident happened, and the way in which it happened. What caused the breaking of the clamp is left to mere conjecture. There is nothing to show that the iron of which it was made was defective. It had been used only a few weeks, and with safety, and there is no proof whatever of the derrick ever having been overweighted. There is the testimony of one witness that after the clamp fell he glanced at it casually, and saw, near the fracture in the iron, a spot which at first he spoke of as being rust, from which it is inferred that the interior of the metal must have been subjected to the corrosion of atmospheric influence, and that the fracture, therefore, existed some time before the break occurred; but in his cross-examination this witness swears that he could not tell whether the spot was rust or paint. That the clamp had been put to some extraordinary or excessive strain is merely a conjecture. The inferences from which negligence of the defendant is sought to be drawn result only from the testimony of expert witnesses, dealing with a supposed state of facts, of the actual existence of which there is no proof whatever in the record. It does not suffice to establish negligence to call expert witnesses as to the effect of certain conditions, unless there is some substantial proof that such conditions, or some of them, really existed. This is a case in which the cause of the breaking of the iron is purely speculative, and I think the complaint was properly dismissed.

VAN BRUNT, P. J., concurs.